## In re Linda HORTON, Debtor.

### No. 03–61750.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Nov. 24, 2003.

Paul J. Nicoletti, Bloomfield Hills, MI, for Debtor.

## OPINION REGARDING CREDITOR'S MOTION FOR RELIEF FROM AUTOMATIC STAY

MARCI B. McIVOR, Bankruptcy Judge.

The Creditors, Jerry and Helena Stockman, filed this Motion for Relief from the Automatic Stay on a parcel of vacant real property purchased by the Debtor under a land contract. The Debtor opposes the Motion. The Debtor claims that the land contract at issue is an executory contract which can be assumed and also claims that any arrearage can be cured over the course of her plan, so long as it is cured within a reasonable period of time. The Court finds that it need not lift the automatic stay because, as of a date prior to the Debtor's bankruptcy filing, the Debtor lost all of her interest in the subject property. Therefore, the subject property was not part of the Debtor's bankruptcy estate to which a stay would attach. The Court further finds that, even if the Debtor had

filed her bankruptcy petition prior to the expiration of the redemption period, the Debtor cannot assume the land contract unless she first redeems the property by paying the full arrearage either within the state law redemption period or within the redemption period as extended by Code section 108(b).

### FACTUAL BACKGROUND

Jerry and Helena Stockman are the land contract vendors of a parcel of vacant land located in the Township of Antrim, Shiawassee County, State of Michigan, commonly known as Bancroft Road, Parcel C. The Debtor is the land contract vendee (i.e. the purchaser of the property pursuant to land contract). The parties agree that the approximate market value of the property is $99,000.00. On May 5, 2003, the 53rd District Court entered a Land Contract Judgment of Foreclosure in favor of the Stockmans on the Bancroft Road property (Case No. 02–2881–LT) stating an amount due of $22,890.00, comprised of $18,700.58 in unpaid monthly payments, $4,064.21 in other damages, and costs in the amount of $125.16. The Stockmans claim that, as of October 8, 2003, the arrearage on the Land Contract totaled an amount in excess of $23,091.80, and the balance on the Land Contract is $77,956.44.

On August 5, 2003, the Debtor filed Chapter 13 bankruptcy. At the time of the bankruptcy filing, the 53rd District Court had not issued a Writ of Restitution/Order of Eviction.

On September 22, 2003, the Stockmans filed a Motion for Relief from Stay.[1] The

1. The Stockman's original Motion for Relief from Stay was amended twice, on October 6, 2003 and on October 8, 2003.

2. Mich. Comp. Laws Ann. § 600.5701 (West 2003) states, in part:

Debtor opposes the Stockman's Motion, claiming that the land contract at issue is an executory contract which can be assumed and cured during the course of the plan, so long as it is cured within a reasonable period of time, citing *In re Carr*, 52 B.R. 250 (Bankr.E.D.Mich.1985). The Debtor's plan proposes to pay off the land contract over forty-three months.

### ANALYSIS

#### A. *Jurisdiction*

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. §§ 1334 & 157. Core proceedings include motions to terminate, annul or modify the automatic stay. *Id.* § 157(b)(2)(G). As this matter was filed as a motion for relief from the automatic stay, this is a core proceeding under 28 U.S.C. § 157(b). Thus, this Court has jurisdiction over this matter.

#### B. *The Automatic Stay Does Not Attach to the Subject Property.*

 A creditor's right to a lift of stay is controlled by federal law. However, if a lift of stay motion requires a determination of the parties' rights and remedies with regards to real property, the court must look to state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Delex Management*, 155 B.R. 161 (Bankr.W.D.Mich.1993). Under Michigan law, a land contract vendor who is not being paid may institute a proceeding to recover possession of the land contract premises[2]. Mich. Comp. Laws Ann.

(b) "Premises" includes lands, tenements, condominium property, cooperative apartments, air rights and all manner of real property . . .

§§ 600.5726, 600.5735 (West 2003). Michigan state law procedures require that a land contract vendor file a suit in the appropriate district court. *Id.* at § 600.5706. After trial, if the court finds the plaintiff/land contract vendor is entitled to possession, a judgment for possession (often termed a "Judgment of Foreclosure") is entered which may later be enforced by a Writ of Restitution. *Id.* at § 600.5741. Under Mich. Comp. Laws Ann. § 600.5744, the Debtor is entitled to a statutory period to redeem of either ninety-days or six months from the date of the judgment for possession. Mich. Comp. Laws Ann. § 600.5744 states, in part,

> (3) When the judgment for possession is based upon the forfeiture of an executory contract for the purchase of the premises, the writ of restitution shall not be issued until the expiration of 90 days after the entry of judgment for possession if less than 50% of the purchase price has been paid or until the expiration of 6 months after the entry of judgment for possession if 50% or more of the purchase price has been paid.

In this case, because the Debtor had paid less than 50% of the purchase price, the Debtor's statutory right to redemption ran for ninety-days. Under Michigan law, the date on which an applicable redemption period expires is the cut-off date for the exercise of debtor/purchaser's right to pay in full the arrearage and reinstate the land contract. *In re Carr,* 52 B.R. 250, 253 (Bankr.E.D.Mich.1985).

■ In this case, the Stockmans received their Judgment of Foreclosure on May 5, 2003. The Debtor's redemption period runs for ninety-days from the judgment date, through August 3, 2003. The Debtor did not file her bankruptcy until August 5, 2003 which is two days after the state law redemption period had expired. After August 3, 2003, the Debtor had lost all rights to redeem the property which was her only remaining right in the property. Therefore, at the time the Debtor filed for bankruptcy on August 5, 2003, the Debtor had no rights in the property. Because, as of the bankruptcy filing date, the Debtor no longer had any interest in the property, this Court need not lift the automatic stay because the stay only applies to property of the bankruptcy estate.

■ Assuming, however, that the Debtor had filed her bankruptcy prior to the expiration of the redemption period (for example, on August 2, 2003) then the question becomes, what happens when a land contract vendor files for bankruptcy after the judgment of foreclosure has been entered, but before the ninety-day redemption period has expired. As set forth above, Michigan law governs the rights of the parties under land contracts, including the time allowed for, and the amount required for, redemption after the entry of a Judgment of Foreclosure. Mich. Comp. Laws Ann. §§ 600.5701–600.5759. Notwithstanding the deadlines established by state law, the filing of the bankruptcy triggers the automatic stay provisions set forth in § 362. Therefore, the Court must determine whether the automatic stay tolls the running or expiration of the state law redemption period.

The Sixth Circuit, in *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), held that the automatic stay imposed by 11 U.S.C. § 362, at the time a bankruptcy is filed, does not toll the running of a state law redemption period. In *Glenn,* the debtors filed a Chapter 13 bankruptcy proceeding after a bank initiated foreclosure under the debtors' mortgage but before the expiration of the statutory redemption period. The debtors argued that 11 U.S.C. § 1322(b)(2) and (b)(5) allowed them to cure the default on their mortgage payments and reinstate their mortgage even

though a foreclosure sale had already taken place. The Sixth Circuit disagreed. The Sixth Circuit reviewed both the case law and the legislative history regarding 11 U.S.C. § 1322(b) and concluded:

> All courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the statute itself provides no clear cut-off point except that which the courts may see fit to create ... The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises.

*Glenn*, 760 F.2d at 1435.

After concluding that the foreclosure sale terminated a debtor's statutory right to cure a default, the *Glenn* court addressed the issue of whether the automatic stay provisions of 11 U.S.C. § 362(d) toll the running of the statutory period for redeeming the real estate. The Court concluded that the automatic stay provisions of § 362 do not toll the redemption period, stating:

> We also hold that the automatic stay provisions of 11 U.S.C. § 362(a) do not toll or extend the running of state statutory periods of redemption following foreclosure sales. Moreover, 11 U.S.C. § 105(a) does not empower the courts to issue separate orders tolling statutory redemption periods absent exceptional circumstances such as fraud, mistake, accident, or erroneous conduct. Finally, we hold that section 1322(b)(3) does not permit debtors to spread payment of redemption amounts over the entire life of their Chapter 13 plans.

*Glenn*, 760 F.2d at 1442. In other words, § 362 did not extend the state law deadline for redemption.

In the context of a Chapter 11 case, the Bankruptcy court for the Western District of Michigan addressed the issue of when a foreclosing creditor is entitled to a lift of stay if the debtor files for bankruptcy after a Judgment of Foreclosure on a land contract has been entered, but prior to the exhaustion of the ninety-day redemption period. *Delex*, 155 B.R. 161. The Court cited to the *Glenn* and *Sabec* cases, holding that "once a redemption period begins to run, it is too late to cure a default over the life of a plan." *Glenn*, 760 F.2d 1428; In re *Sabec*, 137 B.R. 659 (Bankr.W.D.Mich.1992)(allowing curing of delinquent real property taxes in a chapter 13 plan because final redemption period had *not* begun too run). The Court then held that 11 U.S.C. § 108(b) governed the rights of the parties. Section 108(b) states:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

In *Delex*, the Debtor's ninety-day redemption period expired on March 30, 1993. Since the debtor filed for bankruptcy on January 7, 1993, the sixty days provided for by § 108(b) expired on March 7, 1993. Because § 108(b) allows the debtor until the latter of the two dates to redeem, the debtor had until March 30, 1993 to pay the redemption amount. That amount was

not paid and, therefore, cause existed under § 362(d) to lift the stay.

Neither the *Glenn* or *Delex* cases specifically addressed the issue of whether the redemption period is tolled in the context of a land contract in a chapter 13 case. However, this Court holds that the reasoning set forth in *Glenn* and *Delex* applies to a land contract in a Chapter 13 and finds no justification for distinguishing between a Chapter 11 and a Chapter 13 for purposes of determining a land contract vendee's rights after the filing of the petition. In both chapters, if the Debtor files during the redemption period, the only way the Debtor may retain the property is to pay the amount required for redemption under state law. *In re Glenn,* 760 F.2d at 1442. A debtor may not assume or reject an executory contract unless the redemption amount has been paid within the time provided for under 11 U.S.C. § 108(b). *Delex,* 155 B.R. at 168. A Chapter 13 debtor who does not pay the judgment of foreclosure within the time provided for in § 108(b) no longer has any interest in the land contract. The debtor's interest is extinguished when the debtor fails to redeem in a timely fashion, and the land contract cannot be assumed in the debtor's Chapter 13 plan.

In the instant case, even if the Debtor had filed for bankruptcy within the ninety-day redemption period, the Debtor's failure to pay the full amount owed pursuant to the Judgment of Foreclosure precludes assumption of the land contract. Specifically, under Bankruptcy Code § 108(b), the Debtor has either until "60 days after the order for relief" or until the deadline established by state law, whichever is la-

ter, to redeem. In this case, assuming a filing date of August 2, 2003, sixty-days after the entry of the order for relief (October 1, 2003), would have been later than the state law imposed deadline of August 3, 2003. However, the Debtor did not redeem by curing the default by the latter date either. Therefore, even if the bankruptcy had been timely filed, the Debtor has lost all of her rights to the property after failing to redeem the property (by paying the amount set forth in the Judgment of Foreclosure) by the October 1, 2003 date, and the property is not part of her bankruptcy estate. Thus, the Court need not lift the stay in order for the Stockmans to proceed with foreclosure.

■ This Court notes that, in the Sixth Circuit, a land contract is an executory contract within the meaning of the Bankruptcy Code. *Terrell v. Albaugh (In re Terrell),* 892 F.2d 469 (6th Cir.1989). Therefore, a conflict may arise between state law requirements for redemption and the rights granted pursuant to 11 U.S.C. § 365 and 11 U.S.C. § 1322(b)(7).[3] Specifically, state law redemption requires that the judgment amount be paid in full prior to the expiration of the redemption period in order for a debtor to retain rights in a land contract while, under § 365 and 1322(b)(7), a debtor may assume or reject a land contract until the date of confirmation, regardless of whether state law redemption period expires. The court in *Delex* dealt with the issue, in the context of a Chapter 11, and held that state law redemption requirements must be met before a debtor has any rights under § 365. The *Delex* court stated:

---

**3.** 1322(b)(7) states:
 (b) Subject to subsections (a) and (c) of this section, the plan may—
 (7) subject to section 365 of this title, provide for the assumption, rejection, or

assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

To assume an executory contract, which is in default as of the filing date and is subject to the running of a redemption period, a two-step process may be utilized. First, the prepetition statutory default must be cured within the § 108(b) time limitation. Second, the debtor may *then* have additional time to determine whether to assume or reject the contract under § 365. Alternatively, a debtor may choose to utilize a one-step process by which all defaults, both prepetition and post-petition and whether subject to the statutory redemption period or not, are cured, and adequate assurance of future performance is given, thereby allowing assumption of the executory contract, *provided* the one-step assumption is sought or occurs before the expiration of the redemption period.

*Delex*, 155 B.R. at 168. Accordingly, in this case, the Court need not consider § 365 because the Debtor did not redeem by paying the full arrearage prior to the expiration of the redemption period.

The Debtor argues that, pursuant to the *Carr* case, if the Debtor filed her petition before the expiration of the redemption period, then the automatic stay tolled the expiration of the redemption period. *In re Carr*, 52 B.R. at 262. Thus, if the Debtor's plan proposed a cure of the land contract default within a reasonable period of time and was otherwise confirmable, the Debtor could cure the default and reinstate the original terms of the land contract. *Id.*

The Court rejects the Debtor's position. The Sixth Circuit in *Glenn* held that the automatic stay does not toll the redemption period. 760 F.2d at 1442. Further, in *Delex*, the court explained that if a bankruptcy case is filed prior to the expiration of the redemption period, the period runs either to its state law limits or for sixty-days from the entry of the order for relief, whichever is later. 155 B.R. at 166–67.

The plan cannot extend payments over time beyond the expiration of the redemption period. Doing so would constitute an impermissible modification of the terms of the land contract. *See Terrell*, 892 F.2d at 469. Therefore, the Debtor must either assume and redeem by paying the arrearage on the land contract, or reject the land contract prior to the expiration of the redemption period.

At oral argument, Debtor's counsel advised the Court that the Debtor has found a purchaser for the property and, that, once the Debtor is provided with a pay-off amount, the Debtor will pay the Stockmans in full. The Court is unaware of any of the details of this sale. However, even if such purchaser does exist, the Court finds that the Debtor's bankruptcy estate does not have an interest in the subject property. Therefore, the Debtor does not have any interest in the property which she could sell.

## CONCLUSION

Because the Debtor only had a right to redeem her property until August 3, 2003 pursuant to state law and because the Debtor did not file her bankruptcy until August 5, 2003, the Debtor did not have any rights to the property when she filed for bankruptcy. Therefore, this Court need not lift the automatic stay because the stay only applies to property of the bankruptcy estate and, in this case, the land contract is no longer property of the Debtor or her estate.